CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
AUG 12 2019
JULIA C. DUDLEY, CLERK
BY: /s/ A. Beagle
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WALTER B. RALLS, | ) |
| Plaintiff, | ) Civil Action No. 3:18CV00110 |
| v. | ) **MEMORANDUM OPINION** |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, et al., | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge |
| Defendants. | ) |

Walter B. Ralls filed this action for fraud and breach of contract against Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus"). The case is presently before the court on the defendants' motion to dismiss. For the reasons set forth below, the motion will be granted in part and denied in part.

## Background

The following facts are taken from the complaint and documents relied on therein. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that the court can properly consider documents that are "integral to and explicitly relied on in the complaint" when ruling on a motion to dismiss).

In February of 2005, Ralls obtained a refinance loan from Countrywide Home Loans, Inc. The loan was evidenced by a note signed by Ralls, and secured by a deed of trust on rental property located at 234 Stribling Avenue in Charlottesville, Virginia (the "Property"). The note was later assigned to Fannie Mae.

At some point thereafter, Ralls defaulted on the note by failing to make monthly mortgage payments. See Compl. ¶ 10, Dkt. No. 1-1 ("Ralls fell into arrears on the note."); Note ¶ 6(B) ("If I do not pay the full amount of each monthly payment on the date it is due, I will be in default."). Seterus,

acting as the loan servicer and agent for Fannie Mae, initiated foreclosure proceedings. Seterus engaged the law firm of Orlans, P.C. ("Orlans") to serve as foreclosure counsel, and directed ALG Trustee, LLC ("ALG"), the substitute trustee, to foreclose on the Property.

"In July 2017, Ralls, realizing he was in arrears, called Seterus to inquire about the status of the loan." Compl. ¶ 14. A representative of Seterus (the "First Seterus Representative") "told him that the loan was in a foreclosure process." Id. Ralls inquired as to the amount of money that would be required to bring the loan current. The First Seterus Representative told Ralls that he would need to make a payment of $13,671.

By letter dated August 1, 2017, Orlans notified Ralls that a foreclosure sale would occur on August 22, 2017 at 2:30 p.m. The notice was sent to the physical address of the Property.

At some point during the first half of August, Ralls called Seterus and spoke to another representative (the "Second Seterus Representative"). During the telephone conversation, the Second Seterus Representative indicated at least twice that the foreclosure sale was scheduled for August 24, 2017, rather than August 22, 2017. Ralls did not have the written notice with him during the conversation and therefore was unaware of any discrepancy between the notice and the information provided by the Second Seterus Representative.

On August 16, 2017, Ralls contacted Robert Rowley, a friend who had helped him avoid foreclosure in the past. Ralls advised Rowley that he needed to make a payment of $13,671 to stop the foreclosure on the Property and reinstate the loan. Rowley, who was preparing to drive to Indiana that same day, made arrangements to borrow the necessary funds from a third party. Rowley also arranged for his friend Sharon Millner to assist in facilitating the transaction.

Ralls was aware that he could stop the foreclosure sale of the Property by filing a Chapter 13 bankruptcy petition. He also knew a local bankruptcy attorney who could assist him in doing so.

2

However, Ralls did not want to file a bankruptcy petition if he could avoid foreclosure by bringing the loan current.

On the morning of August 22, 2017, Ralls went to his car and found the August 1, 2017 notice from Orlans. Upon reading the notice, Ralls realized that the foreclosure sale was scheduled for 2:30 p.m. that day, as opposed to August 24, 2017. Ralls called Orlans and inquired as to whether he could send the law firm the amount needed to reinstate the loan and stop the foreclosure sale. An Orlans representative advised Ralls that the law firm was not authorized to accept any reinstatement funds and that Ralls should contact Seterus.

Ralls immediately called Seterus and spoke to a manager (the "Seterus Manager"). The Seterus Manager confirmed that Ralls would need to make a payment of $13,671 to stop the foreclosure sale and reinstate the loan. Ralls explained that he had previously been told that the foreclosure sale was scheduled for August 24, 2017, and that he had made arrangements to pay the required amount by that date. The Seterus Manager instructed Ralls to wire the $13,671 payment to Seterus as soon as possible, and to send the Seterus Manager the wire transfer number. Ralls and the Seterus Manager then discussed the fact that it would take up to two days for Seterus to actually receive the wired funds. The Seterus Manager advised Ralls that he would consider the loan reinstated upon receipt of the wire transfer number, and that he would then instruct Orlans to stop the foreclosure sale.

Realizing that it would take some time to get the funds wired, Ralls asked the Seterus Manager "whether the sale would be stopped if confirmation of the wiring of the funds came at or slightly after the sale time." Compl. ¶ 37. The Seterus Manager "told Ralls that the sale could be undone even after the sale and assured Ralls that if the wiring notification came soon after the foreclosure, the [Seterus Manager] would take the action necessary to reverse the foreclosure based on confirmation of such wire transfer of such funds." Id. ¶ 38.

3

Ralls alleges that this assurance on the part of the Seterus Manager was intentionally false and fraudulent. During the time period at issue, the "majority of foreclosures were stopped by bankruptcies." Id. ¶ 43. Ralls alleges that the Seterus Manager "knew that if he did not give assurance to Ralls that Ralls could stop the foreclosure scheduled for 2:30 p.m. on August 22, 2017 by wiring $13,671 to Seterus, even if wired shortly after the 2:30 p.m. foreclosure time, there was a significant prospect that Ralls would stop the foreclosure with a Chapter 13 bankruptcy." Id. ¶ 44. Ralls further alleges that the Seterus Manager "knew that it would be to the advantage of Seterus for [the manager] to lead Ralls to believe that he would stop the 2:30 p.m. foreclosure by arranging to have the $13,671 wired to Seterus on August 22, 2017 even if wired after the foreclosure sale had been completed." Id. Thus, Ralls claims that the Seterus Manager's false assurance was made "with a motive to prevent Ralls from stopping the foreclosure by a Chapter 13 bankruptcy." Id.

Based on the Seterus Manager's representations, Ralls did not pursue relief under Chapter 13 and instead persisted in his efforts to wire the requisite payment to Seterus. At or about 2:00 p.m. on August 22, 2017, Ralls finally reached Millner by telephone and advised her of the urgent need to wire $13,671 to Seterus. Ralls also provided Millner with the wiring instructions. Millner then "rushed to the branch office of Bank of America to send the $13,671 by wire to Seterus." Id. ¶ 49.

In the meantime, Ralls raced to the courthouse in Albemarle County, where the foreclosure sale was scheduled to take place. The sale occurred at approximately 2:30 p.m. Fannie Mae made the highest bid for the Property. Ralls alleges that the bid price was substantially less than the value of the Property.

At 2:38 p.m., Millner wired $13,671 to Seterus. Immediately thereafter, Ralls called the Seterus Manager and provided the wire transfer information. The Seterus Manager advised Ralls that the wire transfer information was "acceptable" and that "he was sending the wiring information to the foreclosure law firm." Id. ¶ 57. When Ralls asked whether the foreclosure sale would be

4

aborted, the Seterus Manager "responded in the affirmative." Id. In response to further questions from Ralls, the Seterus Manager "assured Ralls a second time to the effect that the sale would be aborted" and "that Ralls did not need to call back." Id. ¶ 58.

On the morning of August 25, 2017, Ralls went to the Property and found a posting indicating that Fannie Mae was now the owner of the Property. That same day, Ralls learned that the $13,671 payment had been returned to Millner.

Ralls called Seterus and spoke to another representative (the "Third Seterus Representative"). The Third Seterus Representative confirmed that the foreclosure sale had been conducted and claimed that the $13,671 payment "had not posted on time." Id. ¶ 69. Ralls advised the representative that he had been assured by the Seterus Manager that the foreclosure sale would be cancelled upon receipt of the wire transfer information. The Third Seterus Representative transferred Ralls to a female representative (the "Fourth Seterus Representative"). The Fourth Seterus Representative advised Ralls that the payment was "untimely" and that "the amount of the payment was insufficient." Id. ¶ 71. When Ralls explained that he wired the amount that he had been told to send, the Fourth Seterus Representative indicated that Ralls should have requested written confirmation of the amount required to bring the loan current, and that "Seterus was not responsible for the figure given on the phone being the correct reinstatement amount." Id. Ralls alleges that if, prior to the foreclosure, Seterus had told him that he needed to wire an amount higher than $13,671, he could and would have done so. Id. ¶ 72.

## Procedural History

On July 24, 2018, Ralls filed the instant action against Fannie Mae and Seterus in the Circuit Court for the City of Charlottesville, asserting claims of actual fraud and breach of contract. Fannie Mae removed the case to this court. Upon removal, Fannie Mae and Seterus moved to dismiss the

5

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and is now ripe for review.[1]

**Standards of Review**

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

I. **Actual Fraud**

In Count One of the complaint, Ralls asserts a claim of actual fraud against Seterus. This claim is based on the Seterus Manager's allegedly false assurance that the scheduled foreclosure sale would not take place, or would be reversed, if Ralls wired Seterus $13,671 on August 22, 2017, either before or shortly after the sale.

The parties agree that Virginia substantive law applies to the plaintiff's claims. To prevail on a claim of actual fraud under Virginia law, a plaintiff must prove the following elements: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead,

---

[1] The court has determined that oral argument would not aid the decisional process.

(5) reliance by the party misled, and (6) resulting damage to the party misled." Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994).

In moving to dismiss Count One, the defendants first argue that Ralls has not alleged that Seterus made an actionable false representation. More specifically, the defendants contend that the alleged misrepresentation by the Seterus Manager is not actionable since it was "a conditional promise to take future action." Defs.' Br. Supp. Mot. to Dismiss. 8, Dkt. No. 10. For the following reasons, the court is unpersuaded.

As a general rule, "[a] fraud claim cannot be premised 'on unfilled promises or statements about future events.'" Hazaimeh v. United States Bank Nat'l Ass'n, 94 F. Supp. 3d 741, 748 (E.D. Va. 2015) (quoting Albanese v. WCI Communities, Inc., 530 F. Supp. 2d 752, 770 (E.D. 2007)). However, this rule is not without exceptions. For instance, the Supreme Court of Virginia has recognized that a claim for fraud "may sometimes be predicated on promises which are made with a present intention not to perform them, or on promises made without any intention to perform them." Lloyd v. Smith, 142 S.E. 363, 365 (Va. 1928). "The basis for the exception is that 'the state of the promisor's mind at the time he makes the promise is a fact,' so that, if he misrepresents his state of mind, 'he misrepresents a then existing fact.'" Merenstein v. St. Paul Fire & Marine Ins. Co., 142 F. App'x 136, 139 (4th Cir. 2005) (quoting Lloyd, 142 S.E. at 366). In such cases, "[t]he alleged misrepresentation is not simply a promise to do something in the future; it is, instead, a deliberate misstatement of an existing fact related to [d]efendant's present intentions." Tidewater Beverage Servs., Inc. v. Coca Cola Co., 907 F. Supp. 943, 947 (E.D. Va. 1995).

In this case, Ralls alleges that the Seterus Manager assured him that the scheduled foreclosure sale would not take place, or would be reversed, if Ralls wired Seterus $13,671 on August 22, 2017, either before or shortly after the sale. Ralls further alleges such assurance was "intentionally false," and that it was made with the "motive to prevent Ralls from stopping the foreclosure by a Chapter 13

7

bankruptcy." Compl. ¶ 44. Accepting the plaintiff's allegations as true, the court concludes that the Seterus Manager's promise regarding future conduct, which was allegedly made with present fraudulent intent, constitutes a sufficient predicate for the plaintiff's claim of fraud. See, e.g., Hazaimeh, 94 F. Supp. 3d at 749 (holding that the plaintiffs stated a plausible claim of actual fraud based on the loan servicer's allegedly false representation that it would stop a foreclosure sale scheduled for the following day if the plaintiffs wired a certain amount of funds to the loan servicer); Matanic v. Wells Fargo Bank, N.A., No. 3:12-cv-00472, 2012 U.S. Dist. LEXIS 134154, at *19 (E.D. Va. Sept. 19, 2012) (concluding that the plaintiff's allegation that the defendant intended to foreclose on the home regardless of whether it received the requested tax information "satisfie[d] the requirement that the promise be false at the time the promisor made the statements," and therefore supported a claim of actual fraud).

The court is also unpersuaded by the defendants' argument that the plaintiff's alleged damages did not result from any act of fraud on the part of Seterus, but were instead caused by the plaintiff's own failure to make timely payments. Ralls specifically asserts that if he had not relied on the alleged misrepresentation by the Seterus Manager, he would have retained a local bankruptcy attorney to stop the foreclosure sale by filing a Chapter 13 bankruptcy petition. Consistent with other decisions, the court finds such allegation sufficient to survive a motion to dismiss. See Hazaimeh, 94 F. Supp. 3d at 750 (concluding that the plaintiffs adequately pled resulting damage by alleging that they did not obtain counsel to stop the foreclosure sale based on the defendant's misrepresentation and that they could have stopped the sale by filing for bankruptcy); Thomas v. Bank of Am., N.A., No. 4:12-cv-00142, 2013 U.S. Dist. LEXIS 189799, at *13 (E.D. Va. Mar. 19, 2013) (same).

Finally, the court must reject the defendants' argument that the claim of actual fraud is barred by Virginia's "economic loss" or "source of duty" rule. This rule is "intended to preserve the

8

bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement." Richmond v. Madison Mgmt. Grp., Inc., 918 F.2d 438, 446 (4th Cir. 1990). The rule "prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." Id. "Under this rule, the distinction between a tort claim and a contract claim is ascertained by looking to the source of the duty that was allegedly breached." Crosby v. ALG Trustee, LLC, 822 S.E.2d 185, 189 (Va. 2018). "[I]f, when the surface is scratched, it appears that the defendant has breached a duty imposed by law, not by contract, the economic loss rule should not apply." Madison Mgmt. Grp., 918 F.2d at 446.

In this case, there is no suggestion or indication that Seterus had a contractual duty to stop or cancel the foreclosure of the Property. Instead, Ralls alleges that Seterus "violated a duty imposed by tort law, i.e., the duty not to commit fraud." Id. Consequently, Seterus is "'not entitled to the protection of the economic loss rule, which protects only those defendants who have breached only contractual duties.'" Hazaimeh, 94 F. Supp. 3d at 748 (quoting Madison Mgmt. Grp., 918 F.2d at 447)); see also Bennett v. Bank of Am., N.A., No. 3:12-cv-00034, 2012 U.S. Dist. LEXIS 54725, at *27 (E.D. Va. 2012) (finding the defendant's reliance on the economic loss rule "misplaced" since the defendant did not have a contractual duty to cancel the foreclosure of the plaintiff's home).

For these reasons, the defendants' motion to dismiss will be denied with respect to Count One.

## II. Breach of Contract

In Count Two of the complaint, Ralls asserts a claim for breach of contract against Fannie Mae. Ralls alleges that Fannie Mae breached what he describes as a bilateral oral contract, under which Fannie Mae, through Seterus, agreed to abort or reverse any foreclosure sale if Ralls made a payment of $13,671 before or shortly after the scheduled sale.

To prevail on a claim for breach of an oral contract, the plaintiff "must first prove that a valid oral contract existed." Dean v. Morris, 756 S.E.2d 430, 432 (Va. 2014). "To prove a contract's existence, all of the essential elements must be proven." Id. In particular, "there must be a complete agreement which requires acceptance of an offer, as well as valuable consideration" from both sides. Montagna v. Holiday Inns, Inc., 269 S.E.2d 838, 844 (Va. 1980); see also Albayero v. Wells Fargo Bank, N.A., No. 3:11-cv-00201, 2011 U.S. Dist. LEXIS 114974, at *17 (E.D. Va. Oct. 5, 2011) ("Under Virginia law, an enforceable contract requires the existence of valid consideration from all parties to an agreement.") (citing Looney v. Belcher, 192 S.E. 891 (1937)).

The Supreme Court of Virginia has held that "[a] promise to forbear the exercise of a legal right is adequate consideration to support a contract." Hamm v. Scott, 515 S.E.2d 773, 774 (Va. 1999). "However, '[a] debtor's promise to pay sums already due is not sufficient consideration to support a creditor's agreement' to forbear from exercising a legal right of foreclosure.'" Albayero, 2011 U.S. Dist. LEXIS 114974, at *17 (quoting Albright v. Burke & Herbert Bank & Trust Co., 457 S.E.2d 776, 778 (Va. 1995)); see also Uplinger v. Rees Broome, P.C., No. 1:09-bk-13129, 2011 Bankr. LEXIS 3457, at *24 (Bankr. E.D. Va. Sept. 8, 2011) ("In Virginia a promise to pay sums already due is not sufficient consideration, standing alone, to create a binding contract.").

Applying these principles, the court concludes that Ralls has failed to plead sufficient facts to establish the existence of an enforceable oral contract. Ralls maintains that the payment of $13,671 constituted valid consideration on his part. However, the complaint makes clear that Ralls had fallen behind on his loan payments and owed at least that amount to bring the loan current. See Compl. ¶¶ 10, 15. The complaint is devoid of any suggestion that the $13,671 payment exceeded the amount already due to Fannie Mae. "Because a promise to pay an amount already due to another party cannot operate as valid consideration, the payment could not constitute additional consideration supporting an independent, enforceable contract." Albayero, 2011 U.S. Dist. LEXIS 114974, at *18.

In the absence of sufficient factual allegations to support the existence of a valid oral contract, the court concludes that Count Two is subject to dismissal for failure to state a claim. Accordingly, the defendants' motion will be granted with respect to that count.[2]

## Conclusion

For the reasons stated, the defendants' motion to dismiss will be granted in part and denied in part. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff and all counsel of record.

DATED: This 12th day of August, 2019.

_____
Senior United States District Judge

---

[2] In his brief in opposition to the motion to dismiss, Ralls summarily requests leave to amend the complaint in the event that the court grants the defendants' motion to dismiss. Such request is not proper and will not be considered by the court. See ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 218 (4th Cir. 2019) (expressly declining to find that requests to amend made in opposition briefs constitute a proper motion to amend); Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 630–31 (4th Cir. 2008) (affirming the denial of leave to amend where the plaintiffs' request for leave was in a footnote to their response to defendants' motion to dismiss and, thus, did not qualify as a motion for leave to amend").